Jerry M. Bowmer Chairman, Hillsborough County Commission Tampa
QUESTION:
May Hillsborough County use bail bond money which has been forfeited to the county pursuant to s. 903.26, F. S., to pay for the establishment of a toxicology laboratory to be used by the district medical examiner and to pay a percentage of the district medical examiner's staff payroll?
SUMMARY:
The Hillsborough County Commission is not authorized by law to use money deposited as bail and forfeited to the county pursuant to s.903.26, F. S., for any purposes except those expressly specified in s. 142.01, F. S., and s. 9, Art. XVI, State Const. 1885, i.e., to pay the legal costs and expenses, including the fees of officers, incurred as a result of criminal prosecutions wherein the defendant is either insolvent or discharged and such costs and expenses are a legal claim against the county as provided by law.
According to your letter, the private laboratory which has been conducting certain types of chemical tests related to criminal prosecutions for the county has informed you that this service is to be discontinued. Consequently, you state that it is necessary for the county to establish a toxicology laboratory and purchase $135,000 worth of analytic equipment for the processing of tissue and blood samples so that the district medical examiner may conduct these tests in the future. You also state that several years ago the county estreated $500,000 which apparently had been deposited as bail as provided in s. 903.16, F. S., by an `accused marijuana smuggler' who `disappeared on New Year's Eve 1974.' I assume this money was duly forfeited pursuant to s. 903.26, F. S., and deposited in the county's fine and forfeiture fund as provided by ss. 142.01, 142.03, and 903.26(3)(a), F. S. The county, as yet, has spent none of this money, but you wish to know whether it may spend some or all of it to help pay for the establishment of the proposed toxicology laboratory and the purchase of analytic laboratory equipment therefor as well as to pay a portion of the medical examiner's payroll expenses.
According to the provisions of the Medical Examiners Act, ch. 406, F. S., the Medical Examiners Commission, created within the Department of Health and Rehabilitative Services, is responsible for establishing medical examiner districts within the state. See
s. 406.05. I have been informed that the districts established by the commission correspond closely to the boundaries of the 17 judicial circuits defined in s. 26.021, F. S., and that Hillsborough County makes up the 13th medical examiner district. The Governor is charged by s. 406.06(1)(a) with the duty of appointing a district medical examiner in each district (except in certain home rule counties, see s. 406.17). Among other things, the district medical examiner is responsible for determining the cause of death and conducting or providing for examinations, investigations, and autopsies as he shall deem necessary or as shall be requested by the state attorney whenever any person dies of criminal violence, in police custody, by criminal abortion, by poison, or in any suspicious or unusual circumstances. Section406.11. Pursuant to s. 925.09, F. S., physicians performing autopsies at the request of the state attorney shall be paid reasonable fees therefor from the county fine and forfeiture fund upon the approval of the county commission and the state attorney who ordered the autopsy. Section 406.08(1) provides that the `[f]ees, salaries, and expenses [of the medical examiner] may be paid from the general funds or any other funds under the control of the board of county commissioners.' (Emphasis supplied.) Section 406.10 authorizes the counties within each medical examiner district to provide autopsy and laboratory facilities for each district medical examiner on either a contractual or permanent bais. Unless limited by some other provision of law, these statutory sections appear to permit the county commission to fund the district medical examiner's office budget, including salaries, and to pay for the establishment of a toxicology laboratory and necessary equipment therefor from any funds under its control.
Since your specific inquiry relates to the use of the moneys in the fine and forfeiture fund, it will be necessary for me to look at the laws governing that fund to see whether any restrictions exist which limit its use. The county fine and forfeiture fund is created by s. 142.01, F. S., as a separate fund in each county. Section 142.03, F. S., in pertinent part requires the proceeds of all forfeited bail bonds or recognizances, with certain exceptions not here material, to be paid into the fine and forfeiture fund of the county in which the indictment was found or the prosecution commenced. Compare s. 129.011, F. S., permitting the board of county commissioners to consolidate any of its existing budgetary funds, including the fine and forfeiture fund, into a single general fund `[i]n order to simplify and otherwise improve the accounting system provided by law and to facilitate a better understanding of the fiscal operation of the county by the general public.' And see AGO 076-183. See also s. 129.01(1), F. S., establishing an annual budget system `for such funds as may be required by law or by sound financial practices and generally accepted accounting principles,' and s. 129.02(3), F. S., requiring the fine and forfeiture budget to `contain . . . an itemized estimate of expenditures that need to be incurred to carry on all criminal prosecutions as provided in s. 142.01 . . . .' The fine and forfeiture fund consists of all fines and forfeitures collected in the county pursuant to the state's penal laws (except those fines imposed pursuant to s. 775.0835(1), F. S., and deposited in the Crimes Compensation Trust Fund); all costs refunded to the county; all funds resulting from the hire or other disposition of convicts; and the proceeds of any special tax levied pursuant to the authority of s. 142.02, F. S., for the expenses of criminal prosecutions. See s. 142.01. See also
ch. 939, F. S., providing for and regulating the taxation against and payment of the costs of criminal prosecution by the county, particularly ss. 939.06-939.08, 939.15, 142.04, 142.09, and 142.10-142.12, F. S. Money or bonds deposited as bail under s.903.16(1), F. S., which have been forfeited to the county and deposited in its fine and forfeiture fund pursuant to the provisions of s. 903.26, F. S., in my opinion would constitute a `forfeiture . . . collected under the penal laws of the state' as the term is used in s. 142.01. See AGO 077-70 for a discussion of the meaning of the terms `penal' and `penal laws.'
The purposes for which moneys in the fine and forfeiture fund may be expended are limited by the express provisions of s. 142.01, F. S., to the expenses of criminal prosecutions (see also ss.129.02(3), 939.07, 939.08, and 939.15, F. S.), or to `criminal expenses, fees, and costs, where the crime was committed in the county and the fees and costs are a legal claim against the county (see ss. 142.11, 142.12, 939.08, and 939.15).' (Emphasis supplied.) But see AGO 076-183's interpretation of s. 129.02(3), F. S., which provides that
 The fine and forfeiture fund budget shall contain an estimate of receipts by source and balances as provided herein, and an itemized estimate of expenditures that need to be incurred to carry on all criminal prosecution as provided in s. 142.01, and all other law enforcement functions and activities of the county now or hereafter authorized by law, and of indebtedness of the fine and forfeiture fund; also of the reserve for contingencies and the balance, as hereinbefore provided, which should be carried forward at the end of the year.
The conclusion reached in that opinion was that s. 129.02(3) has effected an implied modification of s. 142.01 so that moneys in the fine and forfeiture fund not derived from fines and forfeitures collected under the penal laws of the state (such as the special tax levied under s. 142.02, F. S., and fees collected under s. 30.231, F. S.) may be used to defray or fund the expenses of criminal prosecutions as provided in s. 142.01 as well as `all other law enforcement functions and activities of the county now or hereafter authorized by law.' The reason this conclusion in 076-183 was limited to moneys in the fine and forfeiture fund not
derived from fines and forfeitures collected under the penal laws of the state is that those moneys are still controlled by the provisions of s. 9, Art. XVI, State Const. 1885. That constitutional provision provided that:
 In all criminal cases prosecuted in the name of the State when the defendant is insolvent or discharged, the legal costs and expenses, including the fees of officers, shall be paid by the counties where the crime is committed, under such regulations as shall be prescribed by law, and all fines and forfeitures collected under the penal laws of the State shall be paid into the County Treasuries of the respective Counties as a general County fund to be applied to such legal costs and expenses. (Emphasis supplied.)
Although this provision was not carried forward by the 1968 Revised Constitution, s. 10, Art. XII, State Const., provides that all provisions of Arts. I-IV, VII, and IX-XX, State Const. 1885, which are not inconsistent with the 1968 Revised Constitution were to become statutes subject to modification or repeal as other statutes. The Florida Supreme Court has recognized that former s. 9, Art. XVI has been preserved as a statute. See Benitez v. State,350 So.2d 1100 (3 D.C.A. Fla., 1977), cert. denied, 359 So.2d 1211
(Fla. 1978), and Warren v. Capuano, 269 So.2d 380 (4 D.C.A. Fla., 1972), aff'd, 282 So.2d 873 (Fla. 1973). To my knowledge, this provision has not been modified or repealed by the Legislature and still operates to restrict the purposes for which fines and forfeitures collected under the penal laws of the state may be expended. Consequently, since it is a forfeiture collected under the penal laws of the state, it is my opinion that the $500,000 bail forfeiture may be expended only for the limited purposes expressly specified in s. 142.01 and in s. 9, Art. XVI, State Const. 1885, as a statute — that is, for paying the legal costs and expenses, including the fees of officers, involved in conducting criminal proceedings when the defendant is either insolvent or discharged and such costs and expenses are a legal claim against the county as provided by law. See also ss. 939.06, 939.07, and 939.15, F. S. Such costs and expenses, in my opinion, would not include the expense of establishing and equipping a toxicology laboratory for the use of the district medical examiner; neither would it be permissible to pay any of the medical examiner's staff salaries from this source.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General